# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ECKARD GLOBAL ENERGY, L.L.C. and | § | |
| HAMECK OIL COMPANY, LTD. | § | |
| | § | |
| V. | § | CASE NO. 4:14-CV-413 |
| | § | Judge Mazzant |
| BAKKEN ASSUMPTIONS I, L.L.C., | § | |
| BAKKEN ASSUMPTIONS II, L.L.C., | § | |
| ETHAN JACKSON, WESSLEY JACKSON, | § | |
| FRANK JACKSON, BLAKE JACKSON, | § | |
| MARK JACKSON, ANDREW S. | § | |
| GREENWOOD, MARK E. DICE, AND | § | |
| JOHN A CAMBPELL. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. #11).  After considering this motion, the responses, and the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

In early 2011, Defendants, Ethan, Wessley, and Frank Jackson, sought to invest with Plaintiff, Hameck Oil Company, Ltd. ("Hameck" or "Hameck Oil") (Dkt. #5 at ¶ 25). Defendant, Ethan Jackson, made an initial investment into the FSH Bakken Drilling Fund Ltd. ("FSH Fund"), a Texas Limited Partnership, which acquired leasing rights and mineral leases in the Williston Basin area of North Dakota and Montana.  *Id.*  Defendants, Ethan and Wessley Jackson, collectively invested $3 million in the FSH fund and Frank Jackson invested $100,000 in the fund.  *Id.*

In September 2011, Defendants, Ethan and Wessley Jackson, Mark E. Dice ("Dice"), John A. Campbell ("Campbell"), Andrew S. Greenwood ("Greenwood"), attended the "2011 Investment Conference" hosted by Eckard Companies ("EGE"), held in Plano, Texas (Dkt. #5 at

¶ 26).   During the 2011 Investment Conference, Troy W. Eckard ("Eckard") and other key personnel of EGE disclosed and provided specific and confidential information to investors and spent a significant amount of time with Defendants attending the conference (Dkt. #5 at ¶ 28). Dice discussed securing a Bakken Drilling fund for the Jackson family with EGE; this led to the formation of the HOC Bakken Legacy Fund ("Bakken Legacy Fund").   *Id.*   Dice and Eckard developed the fund by gathering information from Eckard's staff about processes, industry contacts, business practices, proprietary data, and analysis related to the Bakken trend.  *Id.*

In early October 2011, Eckard travelled to Indiana to visit the Jackson family at the request of Ethan Jackson and Mark Dice (Dkt. #5 at ¶ 29).   During the meeting, Eckard provided the Jackson Family with detailed information about the Bakken and Williston Basin trends in anticipation of the Bakken Legacy Fund.  *Id.*   In late October 2011, Eckard made a second trip to Indiana to work out details of the Bakken Legacy Fund.  *Id.*   At the end of the second meeting, the Jackson family made a verbal commitment to form the Bakken Legacy Fund and then formed J Group, which would hold its interest within the fund (Dkt. #5 at ¶ 30).

In December 2011, EGE and J Group formed HOC Bakken Legacy I, LLC ("Legacy I"), a limited liability company, which would acquire oil and gas leases primarily in the Williston Basin of North Dakota (Dkt. #5 at ¶ 31).   Hameck Oil was designated as the manager of Legacy I; its principal place of business was in Texas; and Plaintiffs conducted all Legacy I business from Texas (Dkt. #5 at ¶¶ 31-32).   Individual Defendants traveled to Texas on multiple occasions, on behalf of J Group, to discuss Legacy I business with Plaintiffs (Dkt. #5 at ¶ 32). Hameck also entered into an agreement with J Group ("Company Agreement") (Dkt. #5 at ¶ 33), which required Hameck to prepare an asset-specific lease and well summary providing confidential, detailed summaries (Dkt. #5 at ¶ 36).   This information was maintained within a

secured area of Plaintiffs' offices, where access was limited exclusively those with a security clearance. *Id.* Investors, like J Group, were never allowed access to files unless they executed a confidentiality agreement and were accompanied by one of Plaintiffs' staff members. *Id.* The Company Agreement did contain a Confidentiality Agreement; therefore, J Group was granted access to Plaintiffs' confidential information (Dkt. #5 at ¶¶ 37-38).

Between 2012 and 2013, Greenwood, as in-house counsel for the Jackson Family, formed two businesses, Bakken Assumptions, L.L.C. ("BA I") and Bakken Assumptions II, L.L.C. ("BA II") (Dkt. #5 at ¶ 45). These companies were created to acquire oil and gas leases, including some of the same leases presented to Legacy I (Dkt. #5 at ¶ 46). Prior to and after the formation of BA I and BA II, Defendants continued to engage in business discussions with Plaintiffs regarding Legacy I (Dkt. #5 at ¶ 47). Defendants continued to seek confidential information from Plaintiffs regarding oil and gas operations, but did not disclose that they had become competitors by forming BA I and BA II. *Id.* During this time, Individual Defendants requested Hameck's staff to begin placing title of Legacy I assets into J Group's name (Dkt. #5 at ¶ 48). Plaintiffs honored this request. *Id.*

In February 2012, Greenwood, Dice, and Campbell, attended the 2012 NAPE Expo in Houston, Texas as members of J Group (Dkt. #5 at ¶ 41). In March 2012, Dice, who served as Plaintiffs' primary point of contact for Defendants, began complaining to Eckard about the fees agreed to within the Company Agreement (Dkt. #5 at ¶ 43). In September 2012, Greenwood, Dice, Campbell, Wessley Jackson, and Ethan Jackson attended Eckard's 2012 Investor Conference in Plano, Texas (Dkt. #5 at ¶ 52). The conference was limited to existing partners bound by a confidentiality agreement. *Id.* Eckard and EGE staff spent time discussing confidential information pertaining to Legacy I with the Defendants in attendance (Dkt. #5 at ¶

53).  In October 2012, Greenwood advised Plaintiffs that J Group was not interested in acquiring additional leases in the Bakken trend (Dkt. #5 at ¶ 56).  However in November 2012, Wessley Jackson, Greenwood, and Dice, sent a proposal to Plaintiffs to create a second Legacy fund (Dkt. #5 at ¶ 58).  Greenwood attempted to negotiate the terms of the second fund with Plaintiffs (Dkt. #5 at ¶ 59).  The Jackson Family, Greenwood, and Dice also traveled to Dallas, Texas to discuss Legacy I and Defendants were given confidential information regarding the operations of EGE and the Bakken trend.  (Dkt. #5 at ¶¶ 61-62).

In early June 2013, Defendants requested that Eckard provide them with additional data related to assessing potential leases (Dkt. #5 at ¶ 64).  On July 25, 2013, Plaintiffs obtained a division of interest record for a lease in the Bakken Shale and discovered the owner was listed as "Bakken Assumptions" and listed Campbell as the point of contact (Dkt. #5 at ¶ 69).  On July 28, 2013, Hameck Oil resigned as manager of Legacy I, which became effective on August 15, 2013 (Dkt. #5 at ¶ 71).  On November 1, 2013, Defendants elected and appointed Bakken Oil & Gas Management, Inc. ("Bakken Oil") as the new manager (Dkt. #5 at ¶ 72).

On July 15, 2014, Plaintiffs filed their Amended Complaint (Dkt. #5).  On August 4, 2014, Defendants filed their Answer to Plaintiffs' Amended Complaint (Dkt. #7).  On September 5, 2014, Defendants filed their Motion to Dismiss (Dkt #11).  On October 6, 2014, Plaintiffs filed their Response to Defendants' Motion to Dismiss (Dkt. #16).  On October 24, 2014, Defendants filed their Reply to Plaintiffs' Response (Dkt. #20).

## LEGAL STANDARD

*A. Motion to Dismiss for Lack of Personal Jurisdiction*

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted.  *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).

First, absent a controlling federal statute regarding service of process, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction.  *Id.*  Second, it must be determined whether the exercise of jurisdiction comports with due process.  *Id.*

The Texas long-arm statute extends to the limits of due process under the Constitution. *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 93 (5th Cir. 1992).  As a result, the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute is a federal style inquiry as to whether jurisdiction comports with federal constitutional guarantees.  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum…"  *Helicopteros*, 466 U.S. at 414 n. 9.  General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum.  *Id.* at 416.

Specific jurisdiction exists where the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  For the Court to exercise specific jurisdiction, it must find:  (1) that the foreign defendant purposely directed his activities at residents of the forum and (2) the cause of action arose from or is connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  Specific jurisdiction may be

5

established if the defendant's conduct constitutes only one act in the forum state and that act is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).   However, it is essential that in each case there is an act by which the defendant purposefully availed itself of the benefits and protections of the forum state. *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

    After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of establishing the district court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, no evidentiary hearing is conducted, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id.* (citation omitted).   When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve all factual disputes in favor of plaintiff. *Id.* (citations omitted).

*B. Motion to Dismiss for Failure to State a Claim*

    A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant.   The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement…showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right of relief above the speculative level."  *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 681.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

7

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

## ANALYSIS

*Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants contend that they are not subject to general jurisdiction in Texas because their contacts are not systematic and continuous with Texas (*See* Dkt. # 11 at pg. 20-22).   Further, Defendants assert specific jurisdiction is not appropriate because this case does not arise out of Defendants' contacts with Texas (*See* Dkt. #11 at pg. 20).   Plaintiffs argue that there are sufficient minimum contacts to support specific jurisdiction because Defendants committed tortious acts while within Texas and performed other tortious acts outside of Texas that were directed toward Texas Plaintiffs (Dkt. #16 at pg. 25).

A nonresident defendant's minimum contacts with the forum state can establish either specific jurisdiction or general jurisdiction.   Specific jurisdiction exists if the Court determines that (1) the foreign defendant purposely directed his activities at residents of the forum state and (2) the cause of action arose from or is connected with such activities.   *Burger King Corp.*, 471 U.S. at 472-73.   "General jurisdiction, on the other hand, will attach where the nonresident defendant's contact with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'"   *Alpine View*, 205 F.3d at 215 (citing *Helicopteros*, 466 U.S. at 415-16).

To make a prima facie showing of general jurisdiction, Plaintiffs must produce evidence that affirmatively shows that Defendants' "contacts with Texas that are unrelated to the litigation

are sufficient to satisfy due process requirements." *Id.* at 217 (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 327 (5th Cir. 1996)).  Examining the evidence currently before the Court, it is clear Plaintiffs cannot meet their burden to show Defendants' contacts with Texas are sufficient to establish general jurisdiction.  Defendants are not Texas residents.  At best, the evidence establishes that some Defendants traveled to Texas in the past.  Therefore, it cannot be said that Defendants' contacts with Texas are "continuous and systematic."  Thus, the Court concludes that it cannot exercise general jurisdiction over Defendants.

However, the Court must also consider whether it can exercise specific jurisdiction over Defendants.  Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state.  *Helicopteros*, 466 U.S. at 414 n.8.  "[F]oreseeability [] is critical to the due process analysis…the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *Alpine View*, 205 F.3d at 215 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  "Specific jurisdiction over a nonresident…is appropriate when [he] has purposefully directed [his] activities at the forum state and the litigation results from the alleged injuries that 'arise out of or relate to' those activities."  *Alpine View*, 205 F.3d at 215.

 From a review of the evidence, it is clear that Plaintiffs have met their burden for specific jurisdiction, except as to Defendant Mark Jackson.  First, there is evidence that Defendants purposely directed their activities at Texas residents.  Additionally, the cause of action in this case arises from Defendants' activities within the state.  Plaintiffs have demonstrated that Defendants made false representations about the confidential information sought and obtained by Defendants and failed to disclose their true purpose for obtaining the

information (Dkt. #16 at pg. 26).   These representations and omissions occurred in person in Texas, as well as in letters, faxes, emails, and telephone calls directed to the Texas Plaintiffs (Dkt. #17 at ¶¶ 10, 14, 18, 20, 24-25, 34, 39, 45, 47-49, 53, 59).   In addition, each of the Individual Defendants, except Mark Jackson, traveled to Texas to meet with Plaintiffs and obtained confidential information that is subject to the present lawsuit (Dkt. #17 at ¶¶ 12, 15, 27, 30, 32, 34, 39, 41, 42, 44, 50, 51).[1]

Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."   *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999).   The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there.   *Id.* (citation omitted).   When determining fundamental fairness, the Court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in further fundamental substantive social policies.   *Id.*; *The Richard Grp. v. Brock*, 2007 WL 700896 at *2 (N.D. Tex. Mar. 7, 2007).

In the present case, a finding of jurisdiction does not offend "traditional notions of fair play and substantial justice."   *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). Although Defendants reside in Indiana, there is little burden on Defendants.   Many Defendants traveled to Texas on several occasions for purposes of the business ventures discussed within the

---

[1] Defendants contend that Frank Jackson also never personally travelled to Texas in relation to this lawsuit, however, "[i]n determining whether a prima facie case exists, [the] Court must accept as true [the Plaintiff's] uncontroverted allegation, and resolve in [the Plaintiff's] favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Alpine View*, 205 F.3d at 215.

10

present lawsuit (Dkt. #17 ¶¶ 12, 15, 27, 30, 32, 34, 39, 41, 42, 44, 50, 51).   Additionally, the forum state has an interest in this case.   Legacy I, which was formed by Plaintiffs and Defendants, has a principal place of business in Texas (Dkt. #5 at ¶ 32).   Both Plaintiffs are Texas residents (Dkt. #5 at ¶¶ 1, 2).   The harm to Plaintiffs' business from Defendants' alleged actions took place either directly or indirectly in Texas (Dkt. #17 at ¶¶ 10, 14, 18, 20, 24-25, 34, 39, 45, 47-49, 53, 59).   Defendants contend that Texas is an inappropriate jurisdiction because there is a pending Indiana case filed by Bakken Oil, the current manager of Legacy I, and J Group against Hameck (Dkt. #11 at pg. 22).   However, the Indiana case pertains to Hameck's role as Legacy I's manager.   The present case does not stem from the same cause of action. Instead, this case arises from actions or representations made by Defendants in Texas or directly or indirectly affecting Texas Plaintiffs (Dkt. #17 at ¶¶ 10, 14, 18, 20, 24-25, 34, 39, 45, 47-49, 53, 59).   A finding of jurisdiction comports with due process; and therefore, the Court finds that specific jurisdiction is appropriate in this case.

However, the Court finds that Plaintiffs have not met their burden for specific jurisdiction in regards to Mark Jackson.   Plaintiffs contend that Mark Jackson meets the requirements of specific jurisdiction because he "communicated with [Mr. Eckard] about Mark Dice visiting EGE to discuss investment opportunities" (Dkt. #17 at ¶ 70).   Although a single act can confer personal jurisdiction, the Court finds that Plaintiffs have not met their burden.   Defendants contend that Mark Jackson is not a member or manager of BA I or BA II (Dkt. #11, Ex. B-8 at ¶8).   Additionally, he has not traveled to Texas on behalf of J Group, BA I, or BA II or attended any of Eckard's investment conferences (*Id.* at ¶¶ 9-10).   The Court finds that there is not sufficient evidence to demonstrate that Mark Jackson has purposefully availed himself to Texas law.   Therefore, the Court grants Plaintiffs' request for jurisdictional discovery and will give

Plaintiffs thirty days to take jurisdictional discovery regarding Mark Jackson's contacts with Texas, and file a supplemental brief.  Defendants will be given fourteen days following the filing of Plaintiffs' supplemental brief to respond to the allegations regarding Mark Jackson's contacts with Texas.  The Court denies Defendants' motion to dismiss as to all other Defendants.

*Motion to Dismiss for Failure to State a Claim*

Defendants also move to dismiss Plaintiffs' eight causes of action because they argue the actions arise out of the Legacy I Company Agreement and allege injuries based upon that Company Agreement.  Defendants assert that the Company Agreement is unambiguous and should control this case and that Plaintiffs cannot establish harm suffered based upon the Company Agreement.  Defendants also assert that Plaintiffs' fraud claim should be dismissed because it is not pleaded with the requisite amount of specificity.[2]  Additionally, Defendants contend that Plaintiffs' tortious interference claim should be dismissed because Defendants cannot tortiously interfere with their own contract.

Defendants finally assert that Plaintiffs' breach of contract claim against the Individual Defendants should be dismissed because Plaintiffs have failed to allege specific facts that each Individual Defendant signed the Company Agreement or otherwise agreed to be bound by it. Plaintiffs concede that their breach of contract claim is not plausible; therefore, the Court will dismiss the breach of contract claim.

After reviewing Plaintiffs' amended complaint, the motion to dismiss, and the relevant pleadings, the Court finds that Plaintiffs have stated plausible claims for purposes of defeating a Rule 12(b)(6) motion.  At this stage, Plaintiffs need only state enough facts sufficient for a claim of relief to be plausible on its face.  Therefore, the Court grants the Defendants' motion to

---

[2] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

dismiss as to Plaintiffs' breach of contract claim only, and denies the Defendant's motion to dismiss as to all other claims within Plaintiffs' amended complaint.

## CONCLUSION

Based on the foregoing, the Court finds Defendants' Motion to Dismiss (Dkt. #11) is hereby **GRANTED IN PART** and **DENIED IN PART**.   Plaintiffs will have thirty days to conduct jurisdictional discovery regarding Mark Jackson's contacts with Texas and file a supplemental brief.  Defendants will be given fourteen days following the filing of Plaintiffs' supplemental brief to respond to jurisdictional allegations.

**SIGNED this 11th day of February, 2015.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE