# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ECKARD GLOBAL ENERGY, L.L.C. and § | | |
| HAMECK OIL COMPANY, LTD. § | | |
| § | | |
| V. § | CASE NO. 4:14-CV-413 | |
| § | Judge Mazzant | |
| BAKKEN ASSUMPTIONS I, L.L.C., § | | |
| BAKKEN ASSUMPTIONS II, L.L.C., § | | |
| ETHAN JACKSON, WESSLEY JACKSON, § | | |
| FRANK JACKSON, BLAKE JACKSON, § | | |
| MARK JACKSON, ANDREW S. § | | |
| GREENWOOD, MARK E. DICE, and § | | |
| JOHN A. CAMBPELL. § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #27). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

In early 2011, Defendants Ethan, Wessley, and Frank Jackson sought to invest with Plaintiff Hameck Oil Company, Ltd. ("Hameck" or "Hameck Oil") (Dkt. #5 at ¶ 25). Defendant Ethan Jackson made an initial investment into the FSH Bakken Drilling Fund Ltd. ("FSH Fund"), a Texas Limited Partnership, which acquired leasing rights to mineral leases in the Williston Basin area of North Dakota and Montana (Dkt. #5 at ¶ 25). Defendants Ethan and Wessley Jackson collectively invested $3 million in the FSH Fund, and Defendant Frank Jackson invested $100,000 in the fund (Dkt. #5 at ¶ 25).

In September 2011, Defendants Ethan and Wessley Jackson (collectively, with Blake Jackson and Frank Jackson, the "Jackson Family"), Mark E. Dice ("Dice"), John A. Campbell ("Campbell"), and Andrew S. Greenwood ("Greenwood") (collectively, "Individual Defendants") attended the "2011 Investment Conference" hosted by Plaintiff Eckard Global

1

Energy, L.L.C. ("EGE"), held in Plano, Texas (Dkt. #5 at ¶ 26). During the 2011 Investment Conference, Troy W. Eckard ("Eckard") and other key personnel of EGE disclosed and provided specific, confidential information to investors, and spent a significant amount of time with Defendants attending the conference (Dkt. #5 at ¶ 28). At that time, Dice discussed securing a Bakken Drilling fund for the Jackson family with EGE; this led to the formation of the HOC Bakken Legacy Fund ("Bakken Legacy Fund") (Dkt. #5 at ¶ 28). Dice and Eckard developed the fund by gathering information from Plaintiffs' staff about processes, industry contacts, business practices, proprietary data, and analysis related to the Bakken trend and Eckard's businesses (Dkt. #5 at ¶ 28).

In early October 2011, Eckard travelled to Indiana to visit the Jackson family at the request of Ethan Jackson and Mark Dice (Dkt. #5 at ¶ 29). During the meeting, Eckard provided the Jackson Family with detailed information about the Bakken and Williston Basin trends in anticipation of the Bakken Legacy Fund (Dkt. #5 at ¶ 29). In late October 2011, Eckard made a second trip to Indiana to work out details of the Bakken Legacy Fund (Dkt. #5 at ¶ 29). At the end of the second meeting, the Jackson family made a verbal commitment to form the Bakken Legacy Fund and then formed J Group, which would hold its interest within the fund (Dkt. #5 at ¶ 30).

In December 2011, EGE and J Group formed HOC Bakken Legacy I, LLC ("Legacy I"), a limited liability company, which would acquire oil and gas leases primarily in the Williston Basin of North Dakota (Dkt. #5 at ¶ 31). Hameck Oil was designated as the manager of Legacy I (Dkt. #5 at ¶ 31). Hameck also entered into an agreement with J Group ("Company Agreement") (Dkt. #5 at ¶ 33), which required Hameck to prepare an asset-specific lease and well summary providing confidential, detailed summaries (Dkt. #5 at ¶ 36). This information was maintained

within a secured area of Plaintiffs' offices, where access was limited exclusively to those with a security clearance (Dkt. #5 at ¶ 36). Investors, like J Group, were not allowed access to files, unless they executed a confidentiality agreement and were accompanied by one of Plaintiffs' staff members (Dkt. #5 at ¶ 36). The Company Agreement signed by EGE and J Group contained a Confidentiality Agreement; therefore, J Group was granted access to Plaintiffs' confidential information (Dkt. #5 at ¶¶ 37-38).[1]

Between 2012 and 2013, Greenwood, as in-house counsel for the Jackson Family, formed two businesses, Bakken Assumptions I, L.L.C. ("BA I") and Bakken Assumptions II, L.L.C. ("BA II") (Dkt. #5 at ¶ 45). These companies were created to acquire oil and gas leases, including some of the same leases presented to Legacy I (Dkt. #5 at ¶ 46). Prior to and after the formation of BA I and BA II, Defendants continued to engage in business discussions with Plaintiffs regarding Legacy I (Dkt. #5 at ¶ 47). Defendants continued to seek confidential information from Plaintiffs regarding oil and gas operations, but did not disclose that they had become competitors by forming BA I and BA II (Dkt. #5 at ¶ 47). During this time, Individual

---

[1] Section 11.2 of the Company Agreement states:
> 11.2 <u>Confidentiality.</u> While owning a Membership Interest each Class B Member will have access to become acquainted with the Company Information, including all information relating to Leases, Wells, Drilling Units, and other assets which includes, but is not limited to, the following (a) business pricing, marketing, and cost data; (b) confidential customer, consultant and vendor information; (c) customer, consultant and vendor lists; (d) contents of contracts and agreements with clients, employees, consultants, lessors, [o]perators and suppliers; and (e) business practices and strategies. The Class B Members understand that the Company will implement policies to keep the Company Information secret, including disclosing the Company Information only on a need-to-know basis and keeping the Company Information in secure areas. The Class B Members acknowledge that the Company Information has been developed or acquired by the Company through the expenditure of substantial time, effort and money, and provides the Company with an advantage over competitors who do not know or use the Company Information. In consideration for receiving access to the Company Information, the Class B Members agree that during the period that the Class B Members own a Membership Interest and five (5) years following the date that the Class B Members cease to own a Membership Interest, the Class B Members will not directly or indirectly disclose or use for any reason whatsoever any of the Company Information, except as required to conduct the business of the Company.

For purposes of the Company Agreement, J Group was considered a Class B Member.

3

Defendants requested Hameck's staff to begin placing title of Legacy I assets into J Group's name (Dkt. #5 at ¶ 48). Plaintiffs honored this request (Dkt. #5 at ¶ 48).

In February 2012, Greenwood, Dice, and Campbell attended the 2012 NAPE Expo in Houston, Texas, as members of J Group (Dkt. #5 at ¶ 41). On or about March 2012, Dice, who served as Plaintiffs' primary point of contact for Defendants, began complaining to Eckard about the fees agreed to within the Company Agreement (Dkt. #5 at ¶ 43). In September 2012, Greenwood, Dice, Campbell, Wessley Jackson, and Ethan Jackson attended Eckard's 2012 Investor Conference in Plano, Texas (Dkt. #5 at ¶ 52). The conference was limited to existing partners bound by a confidentiality agreement (Dkt. #5 at ¶ 52). Eckard and EGE staff spent time discussing confidential information pertaining to Legacy I with Defendants in attendance (Dkt. #5 at ¶ 53). In October 2012, Greenwood advised Plaintiffs that J Group was not interested in acquiring additional leases in the Bakken trend (Dkt. #5 at ¶ 56). However, in November 2012, Wessley Jackson, Greenwood, and Dice sent a proposal to Plaintiffs to create a second Legacy fund (Dkt. #5 at ¶ 58). Greenwood attempted to negotiate the terms of the second fund with Plaintiffs (Dkt. #5 at ¶ 59). During negotiations, Defendants were given confidential information regarding the operations of EGE and the Bakken trend. (Dkt. #5 at ¶ 62).

In early June 2013, Defendants requested that Eckard provide them with additional data related to assessing potential leases (Dkt. #5 at ¶ 64). On July 25, 2013, Plaintiffs obtained a division of interest record for a lease in the Bakken Shale and discovered the owner was listed as "Bakken Assumptions" and listed Campbell as the point of contact (Dkt. #5 at ¶ 69). On July 28, 2013, Hameck Oil resigned as manager of Legacy I, which became effective on August 15, 2013 (Dkt. #5 at ¶ 71). On November 1, 2013, Defendants elected and appointed Bakken Oil & Gas Management, Inc. ("Bakken Oil") as the new manager (Dkt. #5 at ¶ 72).

On May 22, 2014, Plaintiffs filed their state court action in Collin County, Texas (Dkt. #2). This case was removed to the Eastern District of Texas on June 20, 2014, on the basis of diversity jurisdiction (Dkt. #1). On July 15, 2014, Plaintiffs filed their Amended Complaint (Dkt. #5).

On March 16, 2015, Defendants filed their Motion for Summary Judgment (Dkt. #27). On April 2, 2015, Plaintiffs filed their response (Dkt. #29). On April 21, 2015, Defendants filed their reply (Dkt. #33).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th

Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

In the present case, Defendants assert that all of Plaintiffs' claims arise out of the operation and business of Legacy I, and therefore the claims should be controlled by Delaware law as designated in the Company Agreement. (Dkt. #27 at pp. 1; 12-14). Plaintiffs allege that the tort claims are not controlled by the choice of law provision within the Company Agreement, and Texas law should govern (Dkt. #29 at pp. 5-6).

"When the laws of two or more states may apply to the various claims in a federal diversity action, the court must apply the choice of law rules of the forum state." *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) (citing *Mayo v.*

*Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Therefore, Texas choice of law rules will determine which law applies to each claim in the present case.

Generally, Texas law gives effect to contractual choice of law provisions. *Quicksilver Res., Inc.*, 792 F. Supp. 2d at 951; *see Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); Restatement (Second) of Conflict of Laws § 187 (1971). However, "[a] choice of law provision in a contract that applies only to the interpretation and enforcement of the contract does not govern tort claims." *Red Roof Inns, Inc. v. Murat Holdings, LLC*, 223 S.W.3d 676, 684 (Tex. App.—Dallas 2007)*, reh'g overruled*, June 8, 2007; *see Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999), *cert. denied*, 528 U.S. 1075 (2000) (concluding that Texas choice of law clause in employment agreement did not encompass tort claims for personal injury arising out of employment). Specifically, in *Red Roof Inns, Inc.*, the court found that a choice of law provision included within a franchise agreement did not govern the tort claims because "the choice of Ohio law [was] limited to interpretation, construction, and enforcement of the franchise agreement." *Red Roof Inns, Inc.*, 223 S.W.3d at 684. Likewise, in the present case, the choice of law provision states that "[t]he laws of the State of Delaware, without regard to the laws that would apply [], shall govern this Company Agreement and the construction, interpretation, and application thereof." (Dkt. #27, Exhibit 1 at p. 20). Therefore, the Court finds that Delaware law, as set out by the Company Agreement, does not govern the Plaintiffs' tort claims.

Additionally, the Fifth Circuit has held that when the laws of the states do not conflict, no choice of law analysis is required, and the court should apply the law of the forum state. *Mublow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005); *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002). Here, the parties assert that the states with an interest are Delaware, Indiana, and Texas. The Court finds that Delaware and Indiana both

recognize the same rule as Texas, that tort claims asserting injuries that arise from a breach of a duty imposed by law are not controlled or extinguished by a contract. *See, e.g., Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 696-97 (D. Del. 2013); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010) (citing *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 173-74 (Ind. 2003)). Therefore, the Court finds that no conflict exists between the states, and Texas law will apply.[2]

Determining which state's law governs a substantive issue is a question of law. *Minn. Mining & Mfg. Co. v. Nishika, Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996), *rev'd on other grounds*, 953 S.W.2d 733 (Tex. 1997). "Texas courts use the 'most significant relationship' test to decide choice of law issues." *Red Roof Inns, Inc.*, 223 S.W.3d at 684 (quoting *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)). Therefore, "a court must consider which state's law has the most significant relationship 'to the particular substantive issue to be resolved.'" *Id.* (quoting *Hughes Wood Prods., Inc.*, 18 S.W.3d at 205).

Additionally, "Texas law requires an issue-by-issue choice of law analysis." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003). Three sections from the Restatement (Second) of Conflicts of Laws (the "Restatement") guide the Court's 'most significant relationship' analysis in the present case. Restatement § 148 applies to Plaintiffs' fraud claim, and Restatement § 145 applies generally to their tort claims. Both sections refer to Restatement § 6, which sets out general principles that are relevant in a choice of law analysis.

When determining which state's law controls a fraud claim, courts look to Restatement § 148, which provides two methods for selecting the applicable law, depending on where the

---

[2] The Court finds that there is no conflict between the laws of Texas, Indiana, and Delaware as to whether the tort claims asserted by Plaintiffs are controlled by the terms of the licensing agreement. To the extent that parties assert that there is a conflict between the substantive laws of the states regarding Plaintiffs' tort claims, the Court will address those arguments below.

action in reliance occurred. *Quicksilver Res., Inc.*, 792 F. Supp. 2d at 955; *see* Restatement (Second) of Conflict of Laws § 148 (1971). "When the action in reliance occurs in the state where the false representations were made and received, the local law of that state is applied unless another state has a more significant relationship as measured by the factors in Restatement § 6." *Quicksilver Res., Inc.*, 792 F. Supp. 2d at 955; Restatement (Second) of Conflict of Laws § 148(1). "When the action in reliance occurs at least in part in a state other than that where the false representations were made, courts should apply the law of the state with the most significant relationship to the occurrence and the parties." *Quicksilver Res., Inc.*, 792 F. Supp. 2d at 955; Restatement (Second) Conflict of Laws § 148(2). In those instances, the court will consider the following contacts when conducting its 'most significant relationship' test:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2).

The law of the state with the most relevant contacts will apply, unless some other state has a more significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws § 148, comment b. In that case, the court will look to the Restatement § 6 factors to determine which state has the most significant relationship with the pending action. *Id.* Restatement § 6 sets out the following general principles that are relevant in a choice of law analysis:

> (a) the needs of the interstate and international systems,

9

(b) the relevant policies of the forum,
(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971).

After reviewing the relevant pleadings, the Court finds that except for Individual Defendants' domicile, the place of incorporation for Bakken Assumption I and II, and the place where some of Defendants' false representations were made, every § 148 factor demonstrates that Texas has the most significant relationship for the fraud claim (*See* Dkt. #29-1 at ¶¶ 13-17, 24-25, 28, 31-32, 37-42, 48-52). Therefore, the Court finds that Texas law should govern Plaintiffs' fraud claim.

To determine which state's law controls Plaintiffs' other tort claims, the Court looks to Restatement § 145. Section 145 states that the following contacts are to be taken into account when applying the principles of § 6 to determine the law applicable to a particular issue:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971). The contacts should be evaluated according to their relative importance with respect to the particular issue. *Id.* "[T]he number of contacts with a state is not determinative." *Red Roof Inns, Inc.*, 223 S.W.3d at 685 (citing *Doctor v. Pardue*, 186 S.W.3d 4, 10 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "Rather a court must evaluate the contacts in light of the state policies underlying the particular substantive issue." *Id.*

The choice of law analysis is relevant to Plaintiffs' claims for misappropriation of confidential trade secrets, unfair competition, tortious interference, breach of fiduciary duty, and knowing assistance and/or participation in breach of fiduciary duty. Under a § 145 analysis, the Court finds that Texas law governs Plaintiffs' tort claims. Plaintiffs' injuries occurred in Texas (Dkt. #29-1 at ¶¶ 4-6, 53). Defendants' relevant acts and omissions occurred in Texas and Indiana (Dkt. # 29-1 at ¶¶ 13-17, 24-25, 28, 31-32, 37-42, 48-52). The confidential information provided to Individual Defendants was prepared in Texas, maintained in Texas, and provided to Defendants in Texas (Dkt. #29-1 at ¶ 14). Plaintiffs' principal places of business are in Texas; however, Defendants are either Indiana-organized entities or Indiana residents (Dkt. #29-1 at ¶¶ 4-7). Additionally, the parties' relationship was centered in Texas (Dkt. #29-1 at ¶¶ 13, 24, 31-32, 37, 39, 49-52). Therefore, the Court finds that Texas has the most significant relationship to the parties, and Texas law controls Plaintiffs' tort claims.

Additionally, Defendants allege that all of Plaintiffs' claims arise out of and are intertwined with the Company Agreement (Dkt. #27 at p. 10). Therefore, Defendants argue that the terms of the Company Agreement control Plaintiffs' claims (Dkt. #27 at pp. 10-12). Plaintiffs assert that their tort claims neither arise from nor are excused through the terms of the Company Agreement (Dkt. #29 at pp. 12-15).

"Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991), *reh'g overruled*, June 19, 1991 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 92 at p. 655 (5th Ed. 1984)). When determining whether a

plaintiff may recover on a tort theory, the court also examines the nature of the plaintiff's loss. *Id.*

> The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986), *reh'g denied*, July 16, 1986. Therefore, "if the defendant's conduct…would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Sw. Bell. Tel. Co.*, 809 S.W.2d at 494. But, if "the defendant's conduct…would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract." *Id.* When determining if a plaintiff's claim sounds in contract or tort, the court will also examine the nature of the injury. *Narvarez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (citing *Sw. Bell. Tel. Co.*, 809 S.W.2d at 494). Claims sounding in tort are not extinguished or otherwise affected by the mere existence of a contract. *See Juarez v. Chevron USA, Inc.*, 911 F. Supp. 257, 260 (S.D. Tex. 1995) (concluding that tort claims asserted against Chevron employees were independent from breach claims); *Siquieros v. Helen of Troy Tex. Corp.*, EP-00-CA-38-DB, 2000 WL 33348718, at *2 (W.D. Tex. Sept. 15, 2000).

The Court finds that Plaintiffs' tort claims are independent from the Company Agreement. Fraud arising from failing to disclose material facts turns on a duty that arises as a matter of law. *See GMAC Commercial Mortg. Corp. v. E. Tex. Holdings, Inc.*, 441 F. Supp. 2d 801, 807-808 (E.D. Tex. 2006). In the present case, Plaintiffs allege that Defendants failed to disclose material facts regarding their intent in requesting confidential information from Plaintiffs. Likewise, a claim for misappropriation of a trade secret need not turn on a contractual breach. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581, 598 (Tex. App.—Tyler

2013), *reh'g overruled*, Nov. 4, 2013 (Misappropriation claim may arise from breach of a confidential relationship in using the trade secret, or improper discovery of the trade secret). In the present case, Plaintiffs allege that Defendants misappropriated their confidential information (Dkt. #29-1 at ¶¶ 31-33, 39-43, 51-52). Unfair competition "requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). In the present case, Plaintiffs allege that Defendants attended Plaintiffs' conferences and obtained Plaintiffs' confidential information so that they could compete against Plaintiffs (Dkt. #29-1 at ¶¶ 31-32, 39-43, 51-52). Tortious interference with either a prospective or existing contract arises from a duty to not willfully and intentionally interfere with a contract; not the duties of performance created by the contract. *Jackson v. Dole Fresh Fruit Co.*, 921 F. Supp. 454, 457-458 (S.D. Tex. 1996) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995), *reh'g overruled*, June 8, 1995); *see Anderton v. Cawley*, 378 S.W.3d 38, 58-59 (Tex. App.—Dallas 2012, no pet.). In the present case, Plaintiffs assert that Defendants utilized Plaintiffs' confidential information so they could interfere with Plaintiffs' contractual relationship with Legacy I (Dkt. #29-1 at ¶ 53). Finally, knowing assistance in breaching a fiduciary duty does not arise because of a duty created by an agreement, it arises because the law imposes a duty to not knowingly interfere with someone else's fiduciary's duties. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). In the present case, Plaintiffs assert that Defendants interfered with the fiduciary duties that Legacy I owed to Hameck (Dkt. #29-1 at ¶¶ 39-46, 53).

The Court also finds that the damages in the present case do not relate solely to the economic loss of the subject matter of the Company Agreement. *See Sw. Bell Tel. Co.*, 809 S.W.2d at 494. ("When the only loss or damage is to the subject matter of the contract, the

plaintiff's action is ordinarily on the contract."). Plaintiffs' damages include the following: Defendants' profits obtained as a result of their wrongful conduct, Plaintiffs' loss of net revenue and royalty interests with other potential investors arising from Defendants' unlawful competition and reckless inflation of market prices for leases subsequently acquired by Plaintiffs, and a constructive trust over leases and assets acquired by Defendants pursuant to Defendants' wrongful conduct (*See* Dkt. #5). Based on the foregoing, the Court finds that Plaintiffs' tort claims arise separately from the Company Agreement, and thus are not barred by the terms of the agreement.

Defendants did not present any evidence as to the merits of Plaintiffs' substantive causes of action. Therefore, the Court finds that there are several disputed issues of fact in this case, including whether Defendants committed the underlying alleged torts.[3] Based on the foregoing, the Court finds that Defendants' motion for summary judgment is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #27) is hereby **DENIED**.

**SIGNED this 26th day of August, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] In their reply, Defendants assert that Plaintiffs are "trying to amend the Complaint without leave, contending that even if the 'Company Information' is owned solely by Legacy, that '*Defendants misappropriated and obtained through fraud, additional information that was not conveyed to…Legacy*." (Dkt. #33 at p. 7 (citing Dkt. #29 at p. 18)). The Court does not believe that Plaintiffs were trying to amend their complaint or add additional claims to the complaint.